# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE A. GARZA, et al., | ) 1:12cv032 DLB </br>) </br>) </br>) ORDER GRANTING MOTION TO DISMISS </br>) SECOND AMENDED COMPLAINT </br>) (Doc. 27) </br>) </br>) </br>) </br>) </br>) </br>) </br>) |
| Plaintiffs, | |
| v. | |
| BNSF RAILWAY COMPANY, et al., | |
| Defendants. | |

Defendants BNSF Railway Company ("BNSF") and Ben Sheets ("Sheets") (collectively "Defendants") filed the instant motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 16, 2012. The matter was heard on August 24, 2012, before the Honorable Dennis L. Beck, United States Magistrate Judge. Attorney Thomas Cregger appeared telephonically on behalf of Defendants BNSF and Sheets. Attorney John Furstenthal appeared telephonically on behalf of Plaintiffs Jose A. Garza, Eric Finley and Jerry Harris ("Plaintiffs").

## BACKGROUND

Plaintiffs filed this action on January 5, 2012. Plaintiffs assert claims of harassment and employment discrimination on the basis of actual or perceived race and ethnicity, along with claims of retaliation and intentional infliction of emotional distress.

On February 7, 2012, Defendants filed a motion to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

On March 1, 2012, Plaintiffs filed a First Amended Complaint ("FAC"), along with an opposition to the motion to dismiss. On March 15, 2012, the Court issued an order permitting Plaintiffs to file the FAC and denying the motion to dismiss as moot. However, the Court dismissed with prejudice Plaintiffs' retaliation cause of action against Sheets, finding that an individual defendant cannot be liable for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* or the California Fair Employment and Housing Act ("FEHA"), Government Code § 12900 *et seq*.

On March 29, 2012, Defendants filed a motion to dismiss the FAC. On June 11, 2012, the Court granted the motion. By its order, the Court dismissed with prejudice Plaintiffs' claims for discrimination under Title VII and FEHA against Sheets and for harassment under Title VII against Sheets. The Court also granted Plaintiffs leave to amend the following claims: (1) harassment under Title VII and FEHA against BNSF; (2) harassment under FEHA against Sheets; (3) retaliation against BNSF; (4) failure to prevent harassment against BNSF; and (5) intentional infliction of emotional distress.

Plaintiffs filed their Second Amended Complaint ("SAC") on July 2, 2012. Defendants filed the present motion to dismiss on July 16, 2012. Plaintiffs opposed the motion and Defendants replied.

**FACTUAL ALLEGATIONS IN THE SAC**

This race and ethnicity discrimination action is brought by Plaintiff Jose Garza, a Mexican American male, Plaintiff Eric Finley, an African American male who now resides in Texas, and Plaintiff Jerry Harris, an African American male. Plaintiffs name their employer BNSF and their supervisor/manager Ben Sheets as defendants.

Plaintiffs allege that Sheets verbally harassed them on a continuing basis until his departure in 2011 by referring to racial minorities as "Pumpernickels." Sheets used this term over the radio on July 5, 2009, regarding an African American employee named Will Thomas to alert workers to the presence of at least one African American worker. This practice followed a

discussion of the term with non-management employees, including Neal Jensen. Plaintiffs allege that "someone told Mr. Sheets to use the term, or about its definition." SAC ¶ 13. Sheets and other management team members allegedly used the term on the internal radio communication system to signify which employees should be treated negatively. Manager Darrell Kitchen received notice that the word "pumpernickel" was being used as a code word for African Americans and other employees of color, but did not report the problem. SAC ¶ 13.

In 2009, Plaintiff Harris complained to managers Darrell Kitchen and Brad Welte about poor treatment because of his race. Kitchen and Welte "failed to stop the poor treatment of African American or Mexican American employees." SAC ¶ 13.

At "diversity counsel" meetings, employees complained to management about Sheets' racial discrimination and harassment, but noting was done. Plaintiffs state that "[d]etails about the time and locations of those complaints are uncertain at this point." SAC ¶ 13.

Plaintiffs further allege that Defendant Sheets confused African American employees with one another for which he issued apology letters in July 2009 to Plaintiff Harris and employee Will Thomas. Plaintiffs allege that "Sheets could not tell one African American worker from another because of his discriminatory animus." SAC ¶ 13. Further, Sheets and other employees, when discussing President Obama, reportedly stated that they would not want to report to an African American boss and/or that they did not approve of African Americans being in a position of power. SAC ¶13. Plaintiffs contend that employees Lance Peak and Neal Jensen made these comments at an unknown time on BNSF property. Plaintiffs further allege that Lance Peak indicated that BNSF would approve of his being a member of the Ku Klux Klan, but it is uncertain what other employees or managers were present. SAC ¶ 13.

Plaintiffs allege that Sheets made inappropriate comments related to their races. Sheets and other management employees allegedly treated racial minorities, including Plaintiffs, differently because of their race, such as avoiding eye contact, yelling, cursing and raising their voices. SAC ¶ 14. Management, including Sheets, would direct shuttle drivers to provide more favorable treatment to Caucasian employees at the expense of racial minorities. Contract shuttle driver Crystal Thomas witnessed better treatment of Caucasian workers, as they got better drop

3

off and pick up locations. Plaintiffs allege that this activity "involved at least Gary (last name unknown) at the Calwa yard." SAC ¶ 14.

Plaintiffs claim that because of the harassment they had to miss work and take less favorable jobs. Sheets and other management employees allegedly penalized or punished racial minorities and favored Caucasian employees, such as bringing "investigations" against racial minorities resulting in greater discipline for racial minorities, including Plaintiffs. Sheets and other management employees also would conduct more "testing" of racial minorities, including Plaintiffs. Such practice resulted "in a false pretense for bad treatment of racial minorities," including more punishment, less pay and worse jobs. Management would say "I got you" or similar words to minorities, including Plaintiffs. SAC ¶ 16.

Plaintiffs contends that BNSF failed to take corrective action to prevent and to stop the racial harassment. Management reportedly indicated that negative treatment was a result of complaints made about negative treatment. The negative treatment continued and worsened as a result of internal complaints, Department of Fair Employment and Housing ("DFEH") charges and this action. SAC ¶ 17.

Plaintiff Garza reportedly applied for a management job as trainmaster in early 2012. He interviewed for the job, and despite being qualified, was turned down by manager Mark Kirshinger. Manager Kitchen told him that he had done a good job with the application and interview. SAC ¶ 17.

In early 2012, Plaintiffs Garza and Harris were punished for going through a "red block" and given 30 days of discipline. Plaintiffs allege that they would not have been given the discipline by management had they not been minorities. Plaintiff Garza further alleges that the unfair discipline and his race "played a role in managers turning him down for the job of trainmaster in early 2012." SAC ¶ 17.

In 2010 or 2011, Plaintiff Finley claims that he was given excessive discipline for violation of a "form B." He missed approximately one week of pay, was "put on a 'restricted license,' and was placed on probation for one year. Sheets reportedly stated that he was after Finley. The actions allegedly were race based because other Caucasian workers in a similar

circumstance were given lesser or no discipline. SAC ¶ 17.

Plaintiffs Garza and Harris allege lost wages from discipline. Plaintiff Garza also alleges lost wages from the refused promotion to trainmaster and "potentially other subsequent management jobs." SAC ¶ 17.

At some unknown time, Sheets brought discipline against Plaintiff Garza "for nothing while letting slide the infractions of Caucasian coworkers Dave Pettus and Tom Bones." Sheets reportedly told Plaintiff Garza, "'I got you,' indicating his plan to find something for which to punish Mr. Garza, as a result of his discriminatory intent." Sheets previously told Plaintiff Garza that "I got you" for failing to line a derail, which was routinely left unlined by all workers. Plaintiffs allege that Mr. Garza was the victim of selective enforcement of rules because of his race. SAC ¶ 17.

In early 2009, Plaintiff Harris was "given an inordinate amount of discipline while Mr. Sheets was in charge, including four investigations in two months." The disciplines resulted in lost time, approximately four "round trips" and many "record suspensions" with no actual time lost. Sheets reportedly said about Plaintiff Harris "that he wanted to 'get him, no matter what.'" After one of the alleged mistakes by Plaintiff Harris, Sheets "excitedly told Mr. Harris that he was 'through' at the railroad." SAC ¶ 17. One of the investigations in early 2009 was brought by Sheets personally, which is uncommon. Sheets allegedly refused to look Plaintiff Harris in the eye for years after the time of these investigations. SAC ¶ 17.

Plaintiffs assert that they have been harmed by Defendants' actions and have suffered damages. Plaintiff Garza reportedly took 20-40 days off to avoid being around Defendant Sheets. Plaintiff Harris reportedly would take jobs that paid less money to avoid Sheets for months at a time staring in early 2009 and continuing for years. Plaintiff Finley similarly took jobs to stay away from Sheets in 2008 and 2009, which resulted in lost wages. SAC ¶ 19.

Plaintiffs filed complaints with DFEH and were issued right to sue letters in 2011.

Plaintiffs' SAC includes five causes of action: (1) harassment and discrimination based on race against BNSF and Sheets in violation of Cal. Gov. Code § 12940 and 42 U.S.C. § 2000e; (2) retaliation against BNSF and Sheets in violation of Cal. Gov. Code § 12940(h) and 42 U.S.C.

§ 2000e-3(a); (3) failure to prevent harassment against BNSF in violation of Cal. Gov. Code § 12940(k); and (4) intentional infliction of emotional distress against BNSF and Sheets.

## DISCUSSION

A.   Legal Standard

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The federal system is one of notice pleading.  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To avoid a Rule 12(b)(6) dismissal, Plaintiffs must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  The Ninth Circuit has explained as follows:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

B.    Analysis

    1.    First Cause of Action: Discrimination or Harassment Against Defendant Sheets in Violation of Title VII and FEHA

The Court previously dismissed *with prejudice* Plaintiffs' claims against Defendant Sheets for discrimination under Title VII and FEHA and for harassment under Title VII. Plaintiffs also previously conceded that Sheets was an inappropriate individual defendant for harassment purposes. Accordingly, the first cause of action against Defendant Sheets for discrimination and harassment shall be dismissed with prejudice in its entirety.

    2.    First Cause of Action: Harassment and Discrimination Against Defendant BNSF

    a.    Harassment

Defendants contend that Plaintiffs have failed to assert sufficient facts to support a claim of harassment under Title VII and FEHA against BNSF. The Court agrees.

The elements of a "harassment" or "hostile work environment" claim are (1) the plaintiff was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2002) (reciting elements for hostile work environment claim and quoting Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir.2002)); Martinez v. Marin Sanitary Services, 349 F.Supp.2d 1234, 1251 (N.D. Cal.2004) (reciting same elements for claim of racial harassment); Al-Raheem v. Covenant Care, 2011 WL 4628698, *3, (E.D. Cal. Oct. 3, 2011) ("The terms 'hostile work environment' and 'harassment' are used interchangeably in that the elements of a claim under either label are the same."). Harassment claims under Title VII and FEHA apply the same elements. See Thompson v. City of Monrovia, 186 Cal.App.4th 860, 876 (2010) (adopting federal cases for FEHA harassment claims).

A harassment complaint also must allege:

> that under the totality of the circumstances the harassment was pervasive or severe enough to alter the terms, conditions or privilege of employment. Relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

1  Stewart v. Monogram Biosciences, 2011 WL 6140899, *5 (N.D. Cal. Dec. 9, 2011) (quoting
2  Harris v. Sutton Motor Sales & RV Consignments Corp., 406 Fed. Appx. 181, 183 (9th
3  Cir.2010.).

4        Defendants correctly argue that with respect to the harassment claims, Plaintiffs have
5  identified a number of incidents that were not directed at any of the Plaintiffs, such as the
6  comments regarding President Obama made at an unspecified time and to an unspecified
7  audience by BNSF employees Peak and Jensen (SAC ¶ 13); comments by Peak regarding
8  membership in the KKK (SAC ¶ 14); use of the term pumpernickels; non-specific allegations
9  regarding excessive testing and discipline (SAC ¶ 16); and a preference to Caucasian employees
10 in the use of crew transportation (SAC ¶ 14).  The SAC does not allege when, how or even if
11 Plaintiffs learned of these purported comments or incidents.  Presumably, if Plaintiffs were
12 subjected to such harassment, they would be aware of the specifics.

13       Defendants also correctly argue that the SAC does not contain sufficient factual
14 allegations from which an inference of "severe or pervasive" conduct can be drawn.  Manatt, 339
15 F.3d at 799.  As to severity, Plaintiffs' allegations concern infrequent, isolated incidents
16 involving allegedly unequal discipline for rule violations.  Critically, however, Plaintiffs have not
17 denied violating workplace rules and have not provided any specifics regarding more lenient
18 discipline imposed on other employees for the same or similar violations, much less similarly
19 situated non-minority employees.  As to pervasiveness, there is a single, specific incident
20 identified for Harris in 2012, along with unspecified "investigations" in early 2009.  There is a
21 single incident involving Finley in 2010 or 2011.  There also is a single incident involving Garza
22 in 2012, and two other incidents for which there are no dates or details.  SAC ¶ 17.  These
23 sporadic incidents are not so frequent that they would support a harassment claim.

24       Despite multiple opportunities, Plaintiffs repeatedly have failed to cure the deficiencies in
25 their harassment claim against BNSF.  Plaintiffs will not be given further leave to amend this
26 claim.  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (district court may
27 deny a plaintiff leave to amend if the plaintiff had several opportunities to amend its complaint
28 and repeatedly failed to cure deficiencies).  Accordingly, Plaintiffs' first cause of action for

1  harassment against Defendant BNSF shall be dismissed with prejudice.

2              b.      Discrimination

3        Defendants argue that Plaintiffs' disparate treatment claim based on alleged race
4  discrimination must be dismissed because Plaintiffs have failed to plead facts stating a plausible
5  claim. Although a plaintiff need not plead a *prima facie* case of race discrimination, he must
6  allege facts that state a facially plausible claim. Johnson v. Eckstrom, 2011 WL 5975039, *4
7  (N.D. Cal. Nov. 29, 2011). A claim for racial discrimination focuses on the denial of a position
8  or advancement in the work place based on race or other protected classification. McDonnell
9  Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (*prima facie* elements). Here, Plaintiff Garza
10 claims that he lost out on a position or advancement in the workplace because of his race or
11 ethnicity. However, there is nothing in the SAC to give rise to a plausible inference that Plaintiff
12 Garza was denied a promotion or advancement because of his race or ethnicity. There are no
13 allegations that a less qualified person of another race was given the position or positions that
14 Garza sought. Johnson, 2011 WL 5975039, at *5.

15        Plaintiffs contend that each of them, not just Plaintiff Garza, have alleged lost work as a
16 result of their discriminatory treatment, including unequal discipline, and they need only plead a
17 "tangible employment action" to state a discrimination claim. Burlington Industries Inc. v.
18 Ellerth, 524 US 742, 761 (1998). Regardless of whether this is correct, Plaintiffs have failed at a
19 basic level to provide underlying factual allegations to raise an inference of unequal discipline or
20 other "lost work" due to race or ethnicity. For example, Harris and Garza both allege discipline
21 for a "red block" violation, but fail to allege that employees of another race who committed the
22 same "red block" violation escaped discipline. Harris' remaining allegations regarding discipline
23 in 2009 lack any factual detail and Garza's allegations regarding discipline for failing to properly
24 line a derail also fail to allege that other employees were spared discipline for the same violation.
25 As to Finley, Plaintiffs fail to plead facts regarding non-minority employees escaping discipline
26 for a "form B" violation. Plaintiffs' conclusory allegations that they were treated differently
27 because of their race or ethnicity are insufficient to state a claim.

28        Despite the aforementioned deficiencies, Plaintiffs will be given an opportunity to amend

their cause of action for discrimination to the extent they are able to provide sufficient factual allegations. Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### 3. Second Cause of Action: Retaliation against Defendant Sheets

The Court previously dismissed the claim of retaliation against Defendant Sheets with prejudice. Accordingly, the second cause of action against Defendant Sheets again shall be dismissed with prejudice.

### 4. Second Cause of Action: Retaliation against Defendant BNSF

Defendants contend that Plaintiffs have not sufficiently alleged a cause of action for retaliation in violation of Title VII or FEHA. To state a claim for retaliation under Title VII and FEHA, a plaintiff must allege that (1) he engaged in a protected activity, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003); Flait v. North American Watch Corp., 4 Cal.Rptr.2d 522, 528 (Cal.Ct.App. 1992) (lawsuits claiming retaliation in violation of FEHA are analogous to federal Title VII claims).

In this case, the only protected activity identified with particularity in the SAC is the filing of DFEH complaints in 2011. There is no allegation of a specific act taken by BNSF because any of the plaintiffs engaged in such protected activity. Plaintiffs have failed to identify a temporal nexus or causal link between any of the alleged discipline and the filing of the DFEH complaints. For instance, Finley alleges excessive discipline "in and around 2010 or 2011," which cannot be linked to his 2011 DFEH complaint. Garza claims a denied promotion and red block discipline in early 2012, at least three months after the filing of his DFEH complaint in September 2011. Similarly, Harris identifies the red block discipline approximately two months after filing his DFEH complaint. Although Plaintiffs assert that the 2012 incidents are retaliatory following "the earlier complaints and problems starting in or around 2008," the SAC does not clearly identify the "complaints" or the protected activity that occurred in 2008. Opp'n., p. 2.

As with the cause of action for discrimination, Plaintiffs will be given leave to amend their cause of action for retaliation to the extent they are able to allege sufficient factual allegations.

### 5. Third Cause of Action: Failure to Prevent Harassment against Defendant BNSF

As the SAC does not sufficiently identify the factual basis of the alleged harassment, the SAC likewise fails to state a claim for failure to prevent harassment against Defendant BNSF. Therefore, the third cause of action shall be dismissed with prejudice.

### 6. Fourth Cause of Action: Intentional Infliction of Emotional Distress against Defendants BNSF and Sheets

To state a claim for intentional infliction of emotional distress under California law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963, 976 (2009) (citations and quotation marks omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Id. (citations and quotation marks omitted).

The SAC fails to describe, with any specificity, wrongful acts on the part of either defendant to demonstrate extreme and outrageous conduct. As Defendants indicate, many of the alleged acts of extreme conduct are not described as being directed at plaintiffs. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." Lopez v. Costco Wholesale Corp., 2009 WL 3246847, *9 (E.D. Cal. 2009) (citation omitted). Plaintiffs assertion that the conduct or comments need not target specific plaintiffs to be actionable is unavailing. Plaintiffs' citation to Greer v. Paulson, 505 F.3d 1306, 1314 (D.C. Cir. 2007) does not support their

argument. Greer involved comments made to an employee by her employer while she was not working or was away from the office, not comments that she did not hear or were not directed at her. Id. Further, Greer involved a claim of hostile work environment, not a claim for intentional infliction of emotional distress. Furthermore, comments such as "I got you" or that a plaintiff was "through" at BNSF are not sufficient. Lopez, 2009 WL 3246847, at *9 ("Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

Insofar as Plaintiffs make specific claims of excessive discipline, excessive testing or lack of promotion, these are considered personnel management actions that cannot amount to outrageous conduct even if the motive was improper. If the personnel management decisions were improperly motivated, then the remedy is a discrimination claim brought against the employer. Id. at *10; Janken v. GM Hughes Elecs., 46 Cal.App.4th 55, 80 (1996).

For these reasons, Plaintiffs' cause of action for intentional infliction of emotional distress fails and this cause of action shall be dismissed with prejudice.

**ORDER**

Based on the above, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss the Second Amended Complaint is GRANTED;
2. Plaintiffs' first cause of action for discrimination or harassment under Title VII and FEHA against Defendant Sheets is DISMISSED WITH PREJUDICE;
3. Plaintiffs' claim for harassment under Title VII and FEHA against Defendant BNSF is DISMISSED WITH PREJUDICE;
4. Plaintiffs' claim for discrimination under Title VII and FEHA against Defendant BNSF is DISMISSED WITH LEAVE TO AMEND.
5. Plaintiffs' second cause of action for retaliation against Defendant Sheets is DISMISSED WITH PREJUDICE.
6. Plaintiffs' second cause of action for retaliation against Defendant BNSF is DISMISSED WITH LEAVE TO AMEND;
7. Plaintiffs' third cause of action for failure to prevent harassment against

Defendant BNSF is DISMISSED WITH PREJUDICE;

8. Plaintiffs' fourth cause of action for intentional infliction of emotional distress against Defendants BNSF and Sheets is DISMISSED WITH PREJUDICE;

9. Plaintiffs shall file an amended complaint that is consistent with this order within twenty-one (21) days of service of this order.

IT IS SO ORDERED.

Dated: **September 11, 2012**              /s/ **Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE